IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BIXY, INC., formerly known as Blimpie International, Inc.; and X2Y1, INC., | : : : : |
| Plaintiffs, | : CIVIL ACTION NO. : 1:07-CV-0780-JOF |
| v. | : : |
| KBI HOLDINGS, L.L.C., and KAHALA CORP., | : : : |
| Defendants. | : |

**OPINION AND ORDER**

This matter is before the court on Defendants KBI Holdings, L.L.C. ("KBI"), and Kahala Corp.'s ("Kahala") motion to transfer venue [11].

**I.   Background**

    **A.   Facts**

Plaintiff, BIXY, Inc. ("BIXY"), is a New Jersey corporation. Until the time Defendants acquired BIXY, BIXY operated under the name Blimpie International, Inc. ("Blimpie"). Blimpie was the national franchisor of more than 1,200 Blimpie stores and owned the intellectual property rights and franchising operations for a number of other food brands. Blimpie qualified as a foreign entity to transact business within the state of Georgia

and conducted all of its accounting, marketing, sales, and other business activities and operations at leased office space in Cobb County, Georgia. Plaintiff, X2Y1, is a Delaware corporation which has at all times herein relevant been the sole shareholder of Blimpie/BIXY. During 2005, Blimpie engaged a business consultant to assist it in restructuring its capital and equity structures. The consultant introduced Blimpie to Kahala, a Florida corporation already involved in a variety of food franchising businesses, as a potential acquirer. Kahala participated in forming KBI, an Arizona L.L.C., as an acquisition entity to acquire Blimpie/BIXY and continues to own the controlling equity interest therein.

Between October 2005 and January 2006, Kahala and KBI conducted extensive due diligence of Blimpie. Such due diligence required Defendants to spend time at Blimpie's Georgia headquarters and interact with its employees. On November 23, 2005, Kahala proposed acquiring 100% of Blimpie's assets and liabilities through KBI. Defendants continued to spend time in Georgia and work with Blimpie employees, vendors, and creditors here. The parties engaged in various dealings and negotiations which ultimately resulted in an Asset Purchase Agreement ("APA"), which detailed terms including the purchase price and Defendants' assumption of various liabilities. The parties closed on the acquisition. Defendants took control of the Blimpie offices in Cobb County containing all of the relevant acquisition documents among with a number of other assets. Defendants also

2

hired a number of former Blimpie employees to come work for KBI/BIXY. Defendants ultimately moved their operations to Arizona.

### B.   Procedural History/Contentions

Plaintiffs filed a twelve-count complaint asserting breach of contract, indemnification, conversion, fraud, defamation, and a number of other claims surrounding Defendants' obligations under the APA in Cobb County Superior Court. Defendants removed the matter to federal court, answered, and counterclaimed for indemnity, breach of representation and warranty, breach of contract, and conversion. Plaintiffs answered Defendants' counterclaims, and the parties began discovery in May 2007. Defendants filed the instant motion to transfer venue on June 7, 2007.

Defendants contend that (1) the forum preference provision in the APA indicates that Maricopa County, Arizona would be a more appropriate forum; (2) the parties lack sufficient contacts with Georgia; (3) Arizona would be a more convenient forum for the key witnesses; and (4) all of the relevant documents are in Arizona. Plaintiffs contend that (1) the APA's venue selection clause is permissive, not mandatory; (2) there are sufficient contacts because Defendants have had and are continuing to have material ongoing business dealings in Georgia, and a substantial part of the events giving rise to the claim occurred in Georgia; (3) Georgia is the most convenient forum for the nonparty witnesses; and (4) the presence of official documents does not warrant transfer.

3

**II.     Discussion**

A federal court may transfer a case to any jurisdiction where it might have originally been brought for "the convenience of the parties and witnesses [or] in the interests of justice." 28 U.S.C. § 1404(a). However, the court should not disturb a plaintiff's choice of forum "unless it is clearly outweighed by other considerations." *Robinson v. Giamarco & Bill, P.C.*, 74 F. 3d 253, 260 (11th Cir. 1996); *Electronic Trans. Network v. Katz*, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989) (Forrester, J.). The burden is upon the moving party, and it must "demonstrate that the balance of convenience and justice weighs *heavily* in favor of the transfer." *Electronic*, 734 F. Supp. at 501 (internal quotations and citations omitted) (emphasis added). Further, transferring venue is not appropriate when it would "merely shift inconvenience from defendants to plaintiffs." *Robinson*, 74 F. 3d at 260. The parties' arguments surround (1) the forum selection clause in the APA, (2) the Plaintiffs' contacts with Georgia, (3) the most convenient forum for the witnesses, and (4) the location of the documents.

Forum selection clauses are relevant in determining whether to transfer venue. *Florida Polk County v. Prison Health Servs.*, 170 F.3d 1081, 1084 n.8 (11th Cir. 1999). Forum selection clauses may be permissive or mandatory. *Id.* A mandatory clause "unambiguously designate[s] the forum to which the parties must enforce their rights under [a] contract." *Id.* A permissive clause gives a plaintiff "an absolute right to choose the

4

forum" but specifies forums to which a party cannot object. *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1260 (11th Cir. 1999). The APA contains the following clause:

> Submission to jurisdiction. Target [Plaintiff] hereby submits to the jurisdiction of any state or federal court sitting in Westchester County, New York, in an action or proceeding arising out of or relating to this Agreement brought by Buyer [Defendant] and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court. Buyer hereby submits to the jurisdiction of any state or federal court sitting in Maricopa County, Arizona, in any action or proceeding arising out of or relating to this Agreement brought by Target and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court. . . . **Nothing in this § 5(o) [sic], however, shall affect the right of any Party to bring any action or proceeding arising out of or relating to this Agreement in any other court or to serve legal process in any other manner permitted by law or in equity.**

(Resp., at 12-13) (emphasis added). This clause is permissive, and under *Snapper* it does not remove Plaintiffs' "absolute right to choose" Georgia as its forum.

A plaintiff's contacts with its chosen jurisdiction may also be relevant to a choice of venue. Defendants argue that neither BIXY nor KBI is registered to do business in Georgia or is now located here. Further, Defendants posit that KBI operated in Georgia solely for the purpose of the acquisition and that it had no intention of remaining in Georgia. "[W]here the forum selected is not the home district for any of the parties involved in the action, plaintiff's original choice of forum is entitled to less weight." *Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1479 (N.D. Ga. 1992) (Forrester, J.). Plaintiffs reason that their primary place of business was Georgia prior to the acquisition giving rise to this suit.

5

Further, they contend that Defendants operated their business from Plaintiffs' Georgia office space for months following the acquisition. In this way, Georgia could be seen as Plaintiffs' home district for purposes of this law suit. This argument dovetails nicely with Plaintiffs' assertion that venue should rest in the district "where a substantial part of the events giving rise to the claim occurred." (Resp., at 11). Plaintiffs claim that many of the bad acts involved in this case, including Defendants' refusal to assume given credit liabilities, Defendants' refusal to turn over necessary tax documents, and Defendants' conversion of various bank accounts, took place while Defendants were still operating out of Plaintiffs' Georgia office. Defendants counter by arguing that the APA, which is the primary source of this dispute, was negotiated and signed in Arizona.

The parties dispute which witnesses will be "key," where these witnesses are located, and the necessity of their live testimony. The most important factor to be considered in determining venue is the convenience of the witnesses, and the moving party must show that an alternate venue would make it *substantially more* convenient *for* the witnesses or "make a specific showing of inconvenience *to* the witnesses." *Electronic*, 734 F. Supp. at 501-02. Plaintiffs' initial disclosures of people likely to have discoverable information included five members of Defendants' senior management located in Arizona, two Atlanta-based attorneys, three additional Georgia residents, BIXY's directors who reside in the Northeast, and a number of other potential witnesses. Plaintiffs contend that many of their witnesses

6

AO 72A
(Rev.8/82)

are former BIXY, bank, or creditor employees who cannot be compelled to testify in Arizona, and that Arizona is only a more convenient forum for Defendants' corporate officers. Plaintiffs point the court toward *Ramsey v. Fox News Network, L.L.C.*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004), where Judge Thrash sensibly states that when weighing "convenience to the witnesses," the court should look more closely at non-party witnesses than party witnesses, who are often more willing to be inconvenienced in order to testify. Defendants contend that the witnesses Plaintiffs reference are not "key witnesses" and "do not have any substantial information relevant to the claims and counterclaims asserted by Plaintiffs and Defendants in this case." (Reply, at 2). Defendants also note that the Plaintiffs were unable to provide contact information for eleven of their "material witnesses" and therefore cannot demonstrate that they reside in Georgia. (*Id.* at 9 n.3). Further, Defendants argue that the testimony of these witnesses can be secured by deposition and presented at trial in Arizona.

The parties place different weights on the location of relevant documents. Defendants submit that all documents relevant to the APA and Defendants' post-contract conduct are in Arizona and that this weighs in favor of that forum. Plaintiffs respond that said documents were in Georgia, that when they were here Defendants refused to provide Plaintiffs with access to them, and that the documents are in Arizona solely because Defendants moved them. Further, Plaintiffs insist that "in an era of photocopying, fax

7

machines and commercial couriers, the location of documents is a neutral factor in deciding whether to transfer venue. (Resp., at 21) (collecting cases).

Having considered all of the arguments above, the court finds the factors weighing in favor or against transfer to be neutral at best. The forum selection clause does not shift the consideration in favor of Defendants and away from Plaintiffs' choice. It is unclear whether Georgia could or could not be considered Plaintiffs' "home district." Further, if the court looks at the facts in the light most favorable to Plaintiffs, it appears that much of the conduct related to Plaintiffs' claims may have occurred in Georgia. The court is unable to determine whether all of the witnesses Plaintiffs claim to need are indeed "key" or "material," but the court finds that Defendants have not shown that Arizona would be a "substantially more convenient" venue for the witnesses or that their executives in Arizona and elsewhere would be specifically inconvenienced by having to come to Georgia. The court further finds the fact that many of Plaintiffs' Georgia witnesses are nonparty witnesses while Defendants' Arizona witnesses are party witnesses to be persuasive. Litigants are more likely to need the power of the court to procure nonparty witnesses than party witnesses, who can generally be compelled to court by their relationship to the parties. Further, the court notes its preference for live versus deposition testimony. While the presence of the documents in Arizona weighs slightly in favor of that forum, the weight is not significant enough to overcome Plaintiffs' choice. As a whole, Defendants have not met

8

their burden to show "that the balance of convenience and justice weighs *heavily* in favor of the transfer."

## III.   Conclusion

Based on the reasoning stated above, Defendants' motion to transfer venue [11] is DENIED.

**IT IS SO ORDERED** this 31st day of October 2007.

                                                   s/ J. Owen Forrester  
                                                   J. OWEN FORRESTER  
                               SENIOR UNITED STATES DISTRICT JUDGE